UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMGEN INC., et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>SANDOZ INC., et al.,<br><br>    Defendants. | Case No. 14-cv-04741-RS   (MEJ)<br><br>**DISCOVERY ORDER**<br><br>Re: Dkt. No. 158 |

## INTRODUCTION

In this patent infringement case, the parties have filed a joint discovery dispute letter concerning Request for Production ("RFP") No. 87 and Interrogatory No. 10 propounded by Defendant Sandoz Inc. ("Sandoz"). Dkt. No. 158. Having considered the parties' positions, relevant legal authority, and the record in this case, the Court issues the following order.

## BACKGROUND

The following background is taken from the parties' joint letter. One of the two asserted patents in this case is U.S. Patent No. 8,940,878 ("the '878 patent"), which is directed to methods of purifying recombinant proteins produced in nonmammalian expression systems. Recombinant proteins are proteins expressed in genetically-modified bacteria. The '878 patent teaches a method of purifying recombinant proteins produced by genetically-modified bacteria that involves separating the recombinant protein from other materials after it has been returned to its "refolded" or natural state. Plaintiffs Amgen Inc. and Amgen Manufacturing, Limited ("Amgen") allege Sandoz uses the methods of the '878 patent in connection with the preparation of an injectable drug known as Zarxio (or filgrastim-sndz). Zarxio is biosimilar (similar to generic) to the innovator product marketed by Amgen known as Neupogen. The two drugs share several

indications, including alleviating side effects from cancer therapy.

Amgen asserts Sandoz infringes at least claim 7 of the '878 patent when it manufactures Zarxio. Claim 7 is a multi-step method that includes particular techniques for solubilizing the protein, refolding the protein, and purifying the protein including "directly applying the refold solution to a separation matrix under conditions suitable for the protein to associate with the matrix." Amgen alleges that, under the particular conditions utilized by Sandoz in the purification of Zarxio, a certain resin used by Sandoz functions as the separation matrix of claim 7. Sandoz disputes that the resin product is a separation matrix, and it alleges that prior use of the resin before the filing of the application that became the '878 patent renders the patent invalid.

RFP No. 87 requests that Amgen produce any internal manuals, descriptions, or protocols that describe the use and effects of the resin at issue. Jt. Ltr., Ex. A, Dkt. No. 158-1. Interrogatory No. 10 requests that Amgen state all facts (including all studies and other documents or evidence) on which it relies for its position that G-CSF associates with the resin when used as described in Sandoz's Biologics License Application. *Id.*, Ex. B, Dkt. No. 158-2. Amgen objects to Sandoz's request for any internal manuals, descriptions or protocols as overly broad, unduly burdensome, and unlikely to lead to relevant documents and things. As to Sandoz's interrogatory, Amgen objects on the ground that it (1) improperly seeks Amgen's litigation contentions, and (2) is premature both to the extent it seeks the disclosure of expert opinion testimony and also because the meaning of "under conditions suitable for the protein to associate with the matrix" is disputed and will be determined by the Court during claim construction. Amgen further objects on the ground that studies, documents, and evidence showing the interaction of Zarxio with the separation matrix are likely in Sandoz's possession and are the subject of pending discovery requests.

## LEGAL STANDARD

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery "regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). Factors to consider include "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant

information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.* Discovery need not be admissible in evidence to be discoverable. *Id.* However, a court "must limit the frequency or extent of discovery otherwise allowed by [the Federal] rules" if "(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C).

Additionally, "[t]he court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," including by (1) prohibiting disclosure or discovery; (2) conditioning disclosure or discovery on specified terms; (3) preventing inquiry into certain matters; or (4) limiting the scope of disclosure or discovery to certain matters. Fed. R. Civ. P. 26(c)(1). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984).

## DISCUSSION

Sandoz maintains the discovery it seeks is relevant because whether it uses a "separation matrix," the identity of that separation matrix, how the relevant resin works, and why the relevant resin is or is not a separation matrix are all central issues to the question of whether Sandoz infringes the '878 patent. Jt. Ltr. at 2. It argues Amgen's use of the resin at issue and the facts about that use are directly relevant to the disputed factual issues regarding infringement, as Amgen's infringement contentions identify a resin as the element in Sandoz's purification process. *Id.* Sandoz further argues Amgen's internal beliefs and statements regarding how the resin works is relevant to these disputed issues. It notes that Amgen's '878 patent is not limited to purification of filgrastim and, as Amgen has asserted a broad claim that applies to any recombinant protein, it "cannot act as though it satisfies its discovery obligations by producing only documents related to filgrastim." *Id.* Sandoz argues that the information currently available to it concerning Amgen's

3

use of the resins has already allowed it to identify potential grounds for invalidating the '878 patent, and the requested discovery will allow Sandoz to follow up on those defenses and obtain evidence that may invalidate the patent. *Id.* at 3.

As to Interrogatory No. 10, Sandoz argues Amgen's response is inadequate because Amgen included the resin at issue in its infringement contentions, and Sandoz's request is standard discovery into the basis for Amgen's allegations, "similar to a request that a party state all facts in support of an affirmative defense or in support of an allegation in a single paragraph of the complaint." *Id.* Sandoz maintains it cannot fully defend against Amgen's claim if Amgen refuses to provide discovery on a central issue regarding its contentions and to identify why the resin used under these specific conditions satisfies the limitations of the specific claim. *Id.*

In response, Amgen notes it has already produced information detailing its use of the resin, but it has not searched the "entire company" for "any internal manuals, descriptions or protocols" that describe the use of a general category of resin. *Id.* at 4. It also notes the maker of the resin makes at least nine types, some suitable for anion exchange and some for cation exchange. *Id.* Amgen argues the relevant issue is not the use of a particular type but the purported use for ion exchange in practicing the claims of the '878, yet Sandoz's request is much broader and seeks all information throughout the entire company relating to the resin generally, without regard to the type, what it is used for, the conditions under which it is used, or the type of separation being conducted. *Id.*

As to Interrogatory No. 10, Amgen contends it improperly seeks support for Amgen's contentions, beyond those already provided pursuant to the Patent Local Rules, and seeks premature expert testimony. *Id.* at 5. It maintains that evidence regarding the association of Zarxio with the resin Sandoz uses, under the conditions that Sandoz employs, is more likely to be in Sandoz's possession than Amgen's. *Id.* While Sandoz wants Amgen to identify "all facts" on which it relies for its position that G-CSF associates with the resin when used as described in Sandoz's abbreviated Biologics License Application, Amgen maintains it has already provided Sandoz with its infringement contentions per Patent Local Rule 3-1 supported by the facts currently known to it. *Id.* As Sandoz has not alleged these contentions to be inadequate, Amgen

4

argues its attempts to gain additional discovery regarding Amgen's contentions are improper at this state in discovery. *Id.* Thus, it argues that any responses to contention interrogatories at this stage, when Sandoz has produced almost no documents, would be incomplete and unnecessarily burdensome given the tentative nature of any responses that would be generated. *Id.*

Having reviewed the parties' arguments regarding RFP No. 87, the Court finds further production appropriate. While Amgen argues the request is overbroad, covering at least nine types of resin that are suitable for anion or cation exchange, it does not appear to dispute that anion exchange and cation exchange would both be "ion exchange" resins within the meaning of claim 7. Further, as Sandoz notes, Amgen's '878 patent is not limited to purification of filgrastim; Amgen has asserted a broad claim that applies to any recombinant protein, and therefore cannot satisfy its discovery obligations by producing only documents related to filgrastim. However, the Court also finds Sandoz's request is likely overly broad given the needs of this case. Accordingly, the Court ORDERS the parties to further meet and confer in an effort to narrow the scope of Sandoz's request, with consideration given to limiting Amgen's response to the purification of recombinant proteins and, if possible, a relevant sampling of the specific resin models used.

As to Interrogatory No. 10, given the nature of Sandoz's request, which seek information regarding the factual basis for Amgen's allegations, and the early stage of this litigation, the Court finds the requests premature. Federal Rule of Civil Procedure 33 permits interrogatories to parties about their factual contentions, yet provides that the Court may postpone answers to those interrogatories "until designated discovery is complete, or until a pretrial conference or some other time." Fed. R. Civ. P. 33(a)(2). "Rule 33(a)(2) provides that interrogatories may relate to any matter that may be inquired into under Rule 26(b) and is not objectionable merely because it asks for contentions that relate to fact or the application of law to fact." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *1 (N.D. Cal. Dec. 11, 2008). However, "courts tend to deny contention interrogatories filed before substantial discovery has taken place, [and instead] grant them if discovery almost is complete." *Id.* (citing *In re Convergent Techs. Sec. Litig.*, 108 F.R.D. 328, 332-38 (N.D. Cal. 1985); additional citation omitted).

Consequently, courts in this district have placed "a burden of justification" on a party who

seeks answers to contention interrogatories before substantial documentary or testimonial discovery has been completed. *See, e.g.*, *In re Convergent*, 108 F.R.D. at 338; *Amgen Inc. v. Sandoz Inc.*, 2016 WL 913105, at *3 (N.D. Cal. Mar. 10, 2016); *Campbell v. Facebook Inc.*, 2015 WL 3533221, at *4 (N.D. Cal. June 3, 2015); *United States v. Bazaarvoice, Inc.*, 2013 WL 1739472, at *3 (N.D. Cal. Apr. 22, 2013); *In re Wells Fargo Residential Mortg. Lending Discrimination Litig.*, 2009 WL 1771368, at *6 (N.D. Cal. June 19, 2009). "[S]uch a party must be able to show that there is good reason to believe that answers to its well-tailored questions will contribute meaningfully to clarifying the issues in the case, narrowing the scope of the dispute, or setting up early settlement discussions, or that such answers are likely to expose a substantial basis for a motion under Rule 11 or Rule 56." *In re Convergent*, 108 F.R.D. at 338-39 (footnote omitted). "A party seeking early answers to contention interrogatories cannot meet its burden of justification by vague or speculative statements about what might happen if the interrogatories were answered." *Id.* at 339. "Rather, the propounding party must present specific, plausible grounds for believing that securing early answers to its contention questions will materially advance the goals of the Federal Rules of Civil Procedure." *Id.* In the case where a defendant seeks responses to early contention interrogatories from a plaintiff, courts should be "especially vigilant" in evaluating the proffered justifications when the plaintiff's complaint is not "facially infirm" and the defendant appears to have control over or adequate access to much of the evidence relevant to its alleged misconduct. *Id.*

Sandoz has not demonstrated that its interrogatory is appropriate at this stage as it has not shown how responding to its interrogatories before substantial discovery has been conducted will contribute meaningfully to clarifying the issues in the case or narrowing the scope of the dispute. As noted above, as part of its infringement contentions, Amgen provided Sandoz with the facts on which it relies for its position that G-CSF associates with the resin when used as described in Sandoz's abbreviated Biologics License Application, yet Sandoz has not alleged Amgen's contentions were inadequate. Further, Sandoz does not dispute that it, rather than Amgen, is likely in possession of documents and evidence regarding the association of Zarxio with the resin under the conditions used by Sandoz. Ultimately, the Court is not persuaded that Sandoz requires a

further response to Interrogatory No. 10 at this time to clarify Amgen's position or the scope of the case prior to claim construction. As one court in this District noted, "if [the plaintiff] were to respond now, his answers likely would be materially incomplete as soon as [the defendant] begins its document production. Moreover, the tentative nature of any responses generated at this stage would be of questionable value to the goal of efficiently advancing the litigation." *In re eBay Seller Antitrust Litig.*, 2008 WL 5212170, at *2; *see also Campbell*, 2015 WL 3533221, at *3 (same). The Court finds it more appropriate to address such interrogatories after the parties have taken fact discovery and the Court has construed the claim terms.

## CONCLUSION

Based on the reasons above, the Court **GRANTS** Sandoz's request for further production in response to RFP No. 87, but **ORDERS** the parties to further meet and confer in an effort to narrow its scope, with consideration given to limiting Amgen's response to the purification of recombinant proteins and, if possible, a relevant sampling of the specific resin models used. The Court **DENIES** Sandoz's motion to compel a further response to Interrogatory No. 10 without prejudice to propounding such an interrogatory at an appropriate time after claim construction and near the close of discovery.

**IT IS SO ORDERED.**

Dated: March 15, 2016

_____
MARIA-ELENA JAMES
United States Magistrate Judge