ERIK J. OLSON (CA SBN 175815)
EJOlson@mofo.com
ERIC C. PAI (CA SBN 247604)
EPai@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California 94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

Attorneys for Defendants
SANDOZ INC., SANDOZ INTERNATIONAL GMBH,
SANDOZ GMBH, and LEK PHARMACEUTICALS, D.D.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>SANDOZ INC., SANDOZ INTERNATIONAL GMBH, and SANDOZ GMBH,<br><br>Defendants. | Case No. 3:14-cv-04741-RS<br>Case No. 3:16-cv-02581-RS<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT REGARDING DAMAGES**<br><br>Date:      December 7, 2017<br>Time:      1:30 pm<br>Ctrm:      3, 17th Floor<br><br>The Honorable Richard Seeborg |
| AMGEN INC. and AMGEN MANUFACTURING, LIMITED,<br><br>Plaintiffs,<br><br>v.<br><br>SANDOZ INC., SANDOZ INTERNATIONAL GMBH, SANDOZ GMBH, and LEK PHARMACEUTICALS, D.D.,<br><br>Defendants. | |

**REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED**

# TABLE OF CONTENTS

| | | Page |
|---|---|---|

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................. 2

I.     INTRODUCTION .................................................................................................. 2

II.    FACTUAL BACKGROUND ................................................................................. 2

      A.     The '878 Patent ........................................................................................ 2

      ███████████████ .................................................................................... 4

      C.     Amgen's Suit Regarding Sandoz's Filgrastim Product ........................... 5

III.   ARGUMENT .......................................................................................................... 6

      A.     Legal Standard Under Rule 56 ................................................................ 6

      B.     AML Lacks Standing ............................................................................... 7

      C.     Amgen Inc. Cannot Seek Lost Profits on Sales of Neupogen ███████
           ████████████████ ............................................................................. 10

      D.     No Plaintiff Is Entitled to Lost Profits, Because There are Non-Infringing
           Alternatives ............................................................................................ 11

           1.     Technical Alternatives Exist ...................................................... 12

           2.     Amgen Has Offered No Competent Evidence that Sandoz Lacks
                Non-Infringing Alternatives ...................................................... 13

      E.     Plaintiffs Cannot Claim Damages Prior to September 21, 2015 ............. 15

      F.     The Proper Hypothetical Negotiation Date is January 27, 2015 ............. 16

IV.   CONCLUSION ..................................................................................................... 19

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*250 L.L.C. v. PhotoPoint Corp.*,
    131 Cal. App. 4th 703 (2005) ................................................................................9

*Amgen Inc. v. Sandoz Inc.*,
    794 F.3d 1347 (Fed. Cir. 2015)..........................................................................5, 6

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986).............................................................................................7

*Apple Inc. v. Samsung Elecs. Co.*,
    No. 11-CV-01846-LHK, 2013 WL 5958178 (N.D. Cal. Nov. 7, 2013)............................11, 12

*August Entm't., Inc. v. Phila. Indem. Ins. Co.*,
    146 Cal. App. 4th 565 (2007) ..............................................................................9

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)............................................................................................6

*Cochrun v. United States*,
    621 F. App'x 655 (Fed. Cir. 2015) .......................................................................8

*Ellis v. San Francisco State Univ.*,
    136 F. Supp. 3d 1140 (N.D. Cal. 2015) ................................................................6

*Fresenius Med. Care Holdings, Inc. v. Baxter Int'l, Inc.*,
    No. C 03-1431 SBA, 2006 WL 1390416 (N.D. Cal. May 18, 2006) ......................................17

*Fujifilm Corp. v. Motorola Mobility LLC*,
    No. 12-cv-03587-WHO, 2015 WL 1265009 (N.D. Cal. Mar. 19, 2015).................................17

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
    318 F. Supp. 1116 (S.D.N.Y. 1970)....................................................................17

*H.R. Techs., Inc. v. Astechnologies, Inc.*,
    275 F.3d 1378 (Fed. Cir. 2002) ...........................................................................7

*Intellectual Ventures I L.L.C. v. Erie Indem. Co.*,
    850 F.3d 1315 (Fed. Cir. 2017)...........................................................................9

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)..........................................................................11

*Matsushita Elec. Indus. Co. v. Zenith Radio*,
    475 U.S. 574 (1986)............................................................................................7

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017)...................................................................................11, 12

*Navajo Nation v. U.S. Forest Serv.*,
   535 F.3d 1058 (9th Cir. 2008)...........................................................................................8

*Oracle Am., Inc. v. Google Inc.*,
   798 F. Supp. 2d 1111 (N.D. Cal. 2011) ....................................................................16, 17

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
   575 F.2d 1152 (6th Cir. 1978)..........................................................................................11

*Poly-America, L.P. v. GSE Lining Tech., Inc.*,
   383 F.3d 1303 (Fed. Cir. 2004)....................................................................................10, 11

*Realtek Semiconductor Corp. v. LSI Corp.*,
   No. C-12-03451-RMW, 2014 WL 46997 (N.D. Cal. Jan. 6, 2014).......................................18

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*,
   853 F.3d 1370 (Fed. Cir. 2017)........................................................................................15

*Sandoz Inc. v. Amgen Inc.*,
   137 S. Ct. 1664 (2017) ...............................................................................................6, 16

*Sicom Sys., Ltd. v. Agilent Techs., Inc.*,
   427 F.3d 971 (Fed. Cir. 2005)...........................................................................................7

*Slimfold Mfg. Co., Inc. v. Kinkead Indus., Inc.*,
   932 F.2d 1453 (Fed. Cir. 1991)........................................................................................12

*Spine Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*,
   620 F.3d 1305 (Fed. Cir. 2010)........................................................................................10

*Warsaw Orthopedic, Inc. v. NuVasive, Inc.*,
   778 F.3d 1365 (Fed. Cir. 2015)........................................................................................10

*Wechsler v. Macke Int'l Trade, Inc.*,
   486 F.3d 1286 (Fed. Cir. 2007)........................................................................................11

*Whitserve, LLC v. Computer Packages, Inc.*,
   694 F.3d 10 (Fed. Cir. 2012)...........................................................................................11

**Statutes**

35 U.S.C. § 100(d) .........................................................................................................7

35 U.S.C. § 154(a)(2)..................................................................................................4, 13

35 U.S.C. § 271(a) .......................................................................................................16

35 U.S.C. § 271(g) ...................................................................................................16

35 U.S.C. § 271(e)(2)(C)(ii)..............................................................................5, 16, 17

35 U.S.C. § 281 .......................................................................................................7

35 U.S.C. § 284 ...................................................................................................8, 18

35 U.S.C. § 287(a) ..................................................................................................15

42 U.S.C. § 262(l)(9)(C) ............................................................................................5

**Other Authorities**

Fed. R. Civ. P.
    8(a)(3)...............................................................................................................8
    56(a) ................................................................................................................6

Fed. R. Evid.
    602..................................................................................................................14
    702..................................................................................................................14

**NOTICE OF MOTION AND MOTION**

TO PLAINTIFFS AMGEN INC. and AMGEN MANUFACTURING, LIMITED AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT on December 7, 2017 at 1:30 pm, or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Richard Seeborg, located at 450 Golden Gate Avenue, San Francisco, California, Defendants Sandoz Inc., Sandoz International GmbH, Sandoz GmbH, and Lek Pharmaceuticals, d.d. (collectively "Sandoz" or "Defendants") by and through their counsel, will move and hereby do move, pursuant to Federal Rule Civil Procedure 56, for summary judgment that Amgen Manufacturing Limited ("AML") be dismissed for lack of standing, that AML and Amgen Inc. (collectively, "Plaintiffs" or "Amgen") are not entitled to lost profits as a matter of law, that the damages period does not start before September 21, 2015, and that the proper hypothetical negotiation date is January 27, 2015 or no later than May 4, 2015.

Sandoz brings this motion on the grounds that AML lacks standing to bring suit for infringement of the U.S. Patent No. 8,940,878 (the "'878 patent"), that ███████████████, that Plaintiffs have admitted that there are non-infringing alternatives to infringement of the '878 patent, and that the Biologics Price Competition and Innovation Act ("BPCIA") sets the date of first infringement.

This motion is based on this Notice of Motion and Motion, the attached Memorandum of Points and Authorities, the Declarations of Erik J. Olson ("Olson Decl.") and Nigel J. Titchener-Hooker, Ph.D., ("TH Decl.") filed concurrently herewith, the records and files in this action, and such further argument and evidence as may be presented at the hearing on the motion.

Dated: October 25, 2017                    MORRISON & FOERSTER LLP

By: _/s/ Erik J. Olson_
Erik J. Olson

Attorneys for Defendants Sandoz Inc.,
Sandoz International GmbH, Sandoz GmbH,
and Lek Pharmaceuticals, d.d.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.      INTRODUCTION

Sandoz does not infringe the '878 patent for the reasons stated in the companion motion pursuant to Rule 56.  Separately, Sandoz moves for summary adjudication of several discrete issues that impact the scope of potential damages and relief in this case.  First, Sandoz moves to dismiss Amgen Inc.'s subsidiary Amgen Manufacturing Limited ("AML") for lack of standing to sue for infringement of the '878 patent. ██████████████████████████████████████████████████ . Thus, it lacks standing under well-established case law.

Second, Amgen Inc. cannot seek lost profits damages, because ████████████████████████████████████████████████████████████████████████████ The Federal Circuit has established that this is a necessary prerequisite to the relief Amgen seeks.

Third, Plaintiffs have not provided evidence sufficient to carry their burden on a key prerequisite for lost profit damages: the absence of non-infringing alternatives to the '878 patent.

Lastly, because there are no genuine disputes of material fact, Sandoz requests a legal ruling to determine when the date for the hypothetical negotiation over a reasonable royalty occurs.  As a matter of law, the hypothetical negotiation occurs when infringement began.  Based on the BPCIA, the first act of infringement raised by Amgen's complaint occurred on January 27, 2015.  Alternatively, undisputed evidence establishes that the first act of alleged infringement occurred ████████████████████████████████████ prior to May 5, 2015.  Sandoz requests an order holding that January 27, 2015 is the right date.

### II.     FACTUAL BACKGROUND

#### A.      The '878 Patent

U.S. Patent No. 8,940,878 (the "'878 patent") was filed on June 24, 2010 (with a claim of priority to June 2009) and issued on January 27, 2015.  (Ex. 1[1].)  Its sole assignee is Amgen Inc.

---

[1] References to "Ex." are exhibits to the Declaration of Erik J. Olson ("Olson Decl."), and references to "ECF No." are to Case No. 14-CV-04741, unless otherwise indicated.

1  (*Id.*; ECF No. 145 ¶ 135; Ex. 14, Doss Dep. at 40:19-41:2.)  The patent is titled "Capture

2  Purification Processes for Proteins Expressed in a Non-Mammalian System."  (Ex. 1.)  It claims a

3  process for purifying recombinant proteins using "capture purification processes" in which the

4  refold solution is directly applied to a separation matrix, the protein to be purified binds to the

5  matrix, the matrix is thereafter washed, and the protein is thereafter eluted.  (*Id.*, Claim 7.)

6      The '878 patent does not claim filgrastim or pegfilgrastim.  (Ex. 1, Claim 7.)  The patent

7  claims no composition of matter at all.

8      The '878 patent also does not claim a method of manufacture or purification process

9  directed to filgrastim or pegfilgrastim.  (*Id.*; Ex. 2,Willson Dep. at 97:11-13; TH Decl. ¶ 30.)

10  Neither drug product is ever mentioned in the specification or claims.  (*See* Ex. 1; TH Decl. ¶ 30.)



Amgen

published a description of that process in U.S. Patent No. 5,849,883 (the "Boone patent"), which issued on December 15, 1998, and expired on May 13, 2008. (Ex. 21, Boone patent at 12:54-14:12; Ex. 19, Arvedson Dep. at 37:20-38:3; Ex. 2, Willson Dep. at 275:21-276:3; 35 U.S.C. § 154(a)(2).)

It is undisputed that the method claimed in the '878 patent is not the only method by which companies can purify filgrastim and pegfilgrastim. (Ex. 15 at RFA Nos. 11, 13, 15; Ex. 16 at RFA No. 8; Ex. 18, Paulson Dep. at 40:4-14.) Dr. Willson, Amgen's expert, agrees. (Ex. 2, Willson Dep. at 94:21-95:13, 276:4-8.) Dr. Nigel Titchener-Hooker, Sandoz's expert, agrees. (TH Decl. ¶¶ 62-63.) As an example, both experts agree that any method of purifying a recombinant protein in which the refold solution is diluted (e.g., with purified water) prior to applying it to the separation matrix would not infringe the '878 patent. (Ex. 2, Willson Dep. at 109:25-110:6; TH Decl. ¶¶ 65-66.) The addition of purified water to the refold solution, which is the simplest method of dilution, was well within the scientific knowledge and capabilities of skilled artisans and of Sandoz in 2015, when infringement allegedly began. (*See* TH Decl. ¶¶ 65-66.)

Amgen admits that the '878 patent does not cover an exclusive method to make Neupogen and Neulasta and that competitors would be able to enter the filgrastim (and pegfilgrastim) market in 2015. According to Amgen's Form 10-K for 2013, "Our material U.S. patents for filgrastim (NEUPOGEN®) expired in December 2013. We now face competition in the United States, which may have a material adverse impact over time on future sales of NEUPOGEN® and, to a lesser extent, Neulasta®. Our outstanding material U.S. patent for pegfilgrastim (Neulasta®) expires in 2015." (Ex. 4 at 42.)



**C.    Amgen's Suit Regarding Sandoz's Filgrastim Product.**

On July 7, 2014, the FDA accepted for review Sandoz's application for biosimilar filgrastim.  (ECF No. 105 at 5-6.)  On July 8 and 25, Sandoz notified Amgen of the FDA's acceptance of Sandoz's application, did not provide Amgen its application, and invited Amgen to bring a declaratory judgment lawsuit on any patent that Amgen believed applied to Sandoz's product or process.  (Ex. 24; Ex. 25 at 2.)  From July 2014 until approval occurred, pursuant to the BPCIA, Sandoz was infringing any patent which Amgen wished to assert in a declaratory judgment action.  35 U.S.C. § 271(e)(2)(C)(ii); 42 U.S.C. § 262(l)(9)(C).  On March 6, 2015, the FDA approved Sandoz's biosimilar filgrastim product.  (Ex. 26.)

On the afternoon of May 5, 2015, the Federal Circuit issued an injunction pending resolution of an appeal from the denial of Amgen's preliminary injunction motion in this case.  (*See* ECF No. 130.)  On September 2, 2015, that injunction expired.  *Amgen Inc. v. Sandoz Inc.*, 794 F.3d 1347, 1360 (Fed. Cir. 2015), *rev'd in part, vacated in part*, 137 S. Ct. 1664 (2017).  On September 3, 2015, Sandoz launched Zarxio                   )  In June 2017, the Supreme Court ruled 9-0 in favor of

Sandoz on all issues presented in the appeals from the denial of the preliminary injunction and ruled that "the Federal Circuit erred in issuing a federal injunction prohibiting Sandoz from marketing Zarxio." *Sandoz Inc. v. Amgen Inc.*, 137 S. Ct. 1664, 1678 (2017).

On September 21, 2015, Amgen informed Sandoz of its intent to add a claim for infringement of the '878 patent. (Olson Decl. ¶ 2.) On October 15, 2015, Amgen filed an amended complaint alleging infringement of the '878 patent. (ECF No. 145.)

Sandoz currently has an application pending before the FDA to market a biosimilar pegfilgrastim product, which has not yet been approved. (Ex. 3, 9/26/2017 Thole Dep. at 254:1-10.) Amgen asserted the '878 patent with respect to the pegfilgrastim product on May 12, 2016. (Case No. 16-CV-02581, ECF No. 1.) There have been no sales of Sandoz's pegfilgrastim product in the United States and FDA action on the application is not expected until the second half of 2019. (Ex. 3, Thole Dep. at 254:1-10.)

### III.   ARGUMENT

#### A.   Legal Standard Under Rule 56

A motion for summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). If the movant succeeds, the burden then shifts to the non-moving party to set forth specific facts showing that there is a genuine issue for trial. *Id.* at 324. A motion under Rule 56 may resolve claims, defenses, or issues that would affect the rights of a party or the scope of trial in other ways. *Ellis v. San Francisco State Univ.*, 136 F. Supp. 3d 1140, 1142 (N.D. Cal. 2015).

A genuine issue of material fact is one "that might affect the outcome of the suit under governing law . . . . Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (citation omitted). The court must view the evidence in the light most favorable to the nonmoving party and draw all justifiable inferences in its favor. *Id.* at 255. The opposing party must produce meaningful evidence to support its position and "must do more than simply show that there is some metaphysical doubt as

1   to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986)

2   (citations omitted).

3         **B.**    **AML Lacks Standing.**

4        "Standing to sue is a threshold requirement in every federal action." *Sicom Sys., Ltd. v.*

5   *Agilent Techs., Inc.*, 427 F.3d 971, 975-76 (Fed. Cir. 2005) (citations omitted). "In order to have

6   standing, the plaintiff in an action for patent infringement must be a 'patentee' pursuant to

7   35 U.S.C. §§ 100(d) and 281, or a licensee who holds 'all substantial rights' in the patent." *H.R.*

8   *Techs., Inc. v. Astechnologies, Inc.*, 275 F.3d 1378, 1384 (Fed. Cir. 2002) (citation omitted). "A

9   nonexclusive license confers no constitutional standing on the licensee to bring suit or even to

10  join a suit with the patentee because a nonexclusive licensee suffers no legal injury from

11  infringement." *Sicom Sys.*, 427 F.3d at 976 (citations omitted).

12                                                               Amgen Inc. is the

13  "owner of all right, title, and interest in the '878 patent." (ECF No. 145 ¶ 135; Ex. 1, '878 Patent

14  at 1; Ex. 14, Doss Dep. at 40:19-41:2.)

15

16

17

18

19

20

21

22

23                         This alone is enough to justify judgment.

24       Plaintiffs foreshadowed this problem in their complaint's request for damages. "Amgen"

25  —————————————

    2

26

27  Either works for purposes of this

motion.

28

is specifically defined in the complaint to include only Amgen Inc., as opposed to the definition of "Plaintiffs," which includes AML.  (*Compare* ECF No. 145 ¶ 11 at 3:3 ["Plaintiff Amgen Inc. ("Amgen")…"] *with* ECF No. 145 at 1:1 ["Plaintiffs Amgen Inc. and Amgen Manufacturing, Limited (collectively, "Plaintiffs")…"].)  The complaint alleges that "*Amgen* has been and continues to be damaged by Defendants' infringement of the '878 patent and is entitled to damages," and seeks "a judgment compelling Defendants to pay to *Amgen* damages adequate to compensate for Defendants' infringement, in accordance with 35 U.S.C. § 284."  (ECF No. 145 ¶ 145 & Prayer for Relief at D (emphasis added).)[3]  Because Plaintiffs did not plead AML's standing, they have waived any right to AML's lost profits for sales of Neupogen.  *See, e.g.*, *Cochrun v. United States*, 621 F. App'x 655, 656 n.1 (Fed. Cir. 2015) (claim waived unless raised in complaint); *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1080 (9th Cir. 2008); Fed. R. Civ. Proc. 8(a)(3).



---

[3] Notably, Plaintiffs allege that AML is an exclusive licensee to the "biological product license to NEUPOGEN® (filgrastim)" obtained from the FDA, (ECF No. 145 ¶¶ 59, 108, 111), but they never allege that AML has a license (exclusive or otherwise) to the '878 patent.

[4]

1

2

3

4

5        Nor is the '878 patent

6 directed to filgrastim or pegfilgrastim; it is directed to recombinant proteins generally. (*See* Ex.

7 1, Claim 7; Ex. 2, Willson Dep. at 97:11-13.) Thus, AML has no license to the ██████ '878

8 patent.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24        Therefore,

25 AML lacks standing and should be dismissed from the case.

26          **C.**     **Amgen Inc. Cannot Seek Lost Profits on Sales of Neupogen** ████

27 ██████████

28      Plaintiffs seek, as a remedy for sales of Zarxio, the profits allegedly lost by Amgen Inc.

1   due to lost sales of Neupogen following the introduction of Zarxio.  Amgen Inc. cannot claim

2   these lost profits because ████████████████████████████████████████████████████████

3   ██████████████████████████

4        "A patentee needs to have been selling some item, the profits of which have been lost due

5   to infringing sales, in order to claim damages consisting of lost profits."  *Poly-America, L.P. v.*

6   *GSE Lining Tech., Inc.*, 383 F.3d 1303, 1311 (Fed. Cir. 2004) (citing *Rite-Hite Corp. v. Kelley*

7   *Co., Inc.*, 56 F.3d 1538, 1548-49 (Fed. Cir. 1995)).  "To be entitled to lost profits, . . . the lost

8   profits must come from the lost sales of a product or service the patentee itself was selling."

9   *Warsaw Orthopedic, Inc. v. NuVasive, Inc.*, 778 F.3d 1365, 1376 (Fed. Cir. 2015), *cert. granted,*

10   *judgment vacated on other grounds sub nom. Medtronic Sofamor Danek USA, Inc. v. NuVasive,*

11   *Inc.*, 136 S. Ct. 893 (2016), *and opinion reinstated in part*, 824 F.3d 1344 (Fed. Cir. 2016); *Spine*

12   *Solutions, Inc. v. Medtronic Sofamor Danek USA, Inc.*, 620 F.3d 1305, 1319 (Fed. Cir. 2010)

13   (citing *Poly-America*, 383 F.3d at 1311) ("It is undisputed that [the patentee] does not itself sell

14   any products.  Therefore, [the patentee] is not entitled to any lost profits damages."), *abrogated*

15   *on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923 (2016).

16   ████████████████████████████████████████████████████████████████████████████

17   ████████████████████████████████████████████████████████████████████████████

18   ████████████████████████████████████████████████████████████████████████████

19   ██████████████████████████████  As the Federal Circuit explained:

20            While we do not speculate concerning the benefits that the two

21           companies reap from dividing their operations and separating the
            owner of the patent from the seller of the patented product, Poly-

22           America and Poly-Flex may not enjoy the advantages of their
            separate corporate structure and, at the same time, avoid the

23           consequential limitations of that structure—in this case, the
            inability of the patent holder to claim the lost profits of its

24           non-exclusive licensee.

25   *Poly-America*, 383 F.3d at 1311.  Amgen Inc. thus cannot seek any lost profits.

26           **D.**    **No Plaintiff Is Entitled to Lost Profits, Because There are**
                   **Non-Infringing Alternatives.**

27        As noted above, Plaintiffs seek lost profits due to the alleged infringement by Sandoz in

28

the manufacture of Zarxio.  To pursue this claim, Plaintiffs' damages expert, Dr. Alan Cox, relies

exclusively on a claim that Plaintiffs can satisfy the four *Panduit* factors.  (Ex. 22 at 12 n.51 ("In

*Panduit*, the court identified these four factors that a plaintiff must establish in order to be

awarded lost profits.").)  One of those factors is "the absence of acceptable non-infringing

alternatives."  *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir.

1978).  Based on undisputed evidence, Plaintiffs cannot satisfy this element.

"Only after the court has decided, as a matter of law, that lost profits are available does the

jury then get to determine the amount of those lost profits."  *Wechsler v. Macke Int'l Trade, Inc*.,

486 F.3d 1286, 1293 (Fed. Cir. 2007) (citing *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369 (Fed.

Cir. 2003)).  The "burden of proving damages falls on the patentee," not the defendant.  *Lucent*

*Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citation omitted); *accord*

*Whitserve, LLC v. Computer Packages, Inc.*, 694 F.3d 10, 26 (Fed. Cir. 2012).  The "patentee

bears the burden of establishing entitlement to damages under the *Panduit* test, including

establishing the absence of acceptable noninfringing substitutes."  *Apple Inc. v. Samsung Elecs.*

*Co.*, No. 11-CV-01846-LHK, 2013 WL 5958178, at *3 (N.D. Cal. Nov. 7, 2013) (citing *Standard*

*Havens Prods., Inc. v. Gencor Indus., Inc.*, 953 F.2d 1360, 1373 (Fed. Cir. 1991)).

"Damages under *Panduit* are not easy to prove." *Mentor Graphics Corp. v. EVE-USA,*

*Inc.*, 851 F.3d 1275, 1285 (Fed. Cir. 2017) (citation omitted).  The local jury instruction for patent

cases clearly identifies a need for Plaintiffs to prove "that there were no acceptable non-infringing

substitutes for the [method] for which [Amgen Inc.] seeks lost profits . . . ."  N.D. Cal. Model

Patent Jury Instruction No. 5.3(2).  The focus of this inquiry is on whether the technology claimed

in the patent is unique or exclusive, whether other techniques exist to achieve the same end, and

whether the alleged infringer would have to invent new methods to design around the patented

feature.  *Id.* ("Factors suggesting that the alternative was available include whether the material,

experience, and know-how for the alleged substitute were readily available and potential

customers would have believed that the alternative was an acceptable substitute."); *Apple*, 2013

WL 5958178, at *5 ("the court may consider whether (1) the defendant could readily obtain all of

the material needed to implement the non-infringing alternative; (2) the non-infringing alternative

Defts' Motion for Summary Judgment re Damages
Case No. 3:14-cv-04741-RS; Case No. 3:16-cv-02581-RS
pa-1805505

11

1  was well known in the field at the time of infringement; and (3) the defendant had all of the

2  necessary equipment, know-how, and experience to use the non-infringing alternative."); *Slimfold*

3  *Mfg. Co., Inc. v. Kinkead Indus., Inc.*, 932 F.2d 1453, 1458 (Fed. Cir. 1991) (citation omitted)

4  (patentee must show "consumers specifically want a device with [the patented] advantages").

5  The alleged infringer does not have to actually implement the alternatives before trial for them to

6  be considered available, acceptable non-infringing alternatives to the patented method.  N.D. Cal.

7  Model Patent Jury Instruction No. 5.3(2); *Apple*, 2013 WL 5958178, at *5.

8  **1.    Technical Alternatives Exist.**

9  With respect to the technical question of whether there are alternative methods to purify

10  proteins generally or filgrastim specifically, there is no dispute.  There are many, and they existed

11  for years before 2015.

12

13

14  First, the '878 patent itself acknowledges that numerous prior methods exist and claims to

15  have invented an incremental improvement in which the refold solution is directly applied to the

16  separation matrix, i.e. applied to the matrix "without removing components of or diluting the

17  refold solution."  (*See* ECF No. 205 at 33; Ex. 1, Claim 7.)  Amgen and its expert agree that

18  diluting the refold solution before proceeding to the accused AEX step would avoid infringement

19  of the '878 patent.  (Ex. 15 at RFA No. 15; Ex. 2, Willson Dep. at 109:25-110:6.)  The addition of

20  purified water—a common embodiment of a dilution procedure—was not a new idea in 2015.

21  (Ex. 1 at 20:27-31; TH Decl. ¶¶ 65-66.)

22

23

24

25  the Boone patent, which

26  is now expired.  (Ex. 15 at RFA No. 14; Ex. 2, Willson Dep. at 94:21-95:13; Ex. 19, Arvedson

27  Dep. at 37:20-22; Ex. 21, Boone patent; 35 U.S.C. § 154(a)(2).)  There is no dispute.  Many

28  technical alternatives exist, and the addition of purified water to the refold solution reflects one

1   that was available as of 2015.

2          2.      **Amgen Has Offered No Competent Evidence that Sandoz Lacks Non-Infringing Alternatives.**

3          Given that Amgen admits that non-infringing alternatives to make filgrastim existed in

4   2015, it must show that they were somehow unavailable to Sandoz.  Amgen could have tried to

5   meet this burden through its technical expert, but it did not.  Dr. Willson agreed that he would not

6   be giving any opinion that is not stated in his report, and he agrees that his report contains no

7   opinion on non-infringing alternatives.  (Ex. 2, Willson Dep. at 20:1-8.)

8          So, Amgen seeks to rely on opinions from its damages expert, but Dr. Cox's deposition

9   plainly shows that he cannot fill the gap.  First and foremost, he lacks the expertise necessary to

10  address the issue.  He has no technological training and cannot give any opinions regarding what

11  is and is not a non-infringing alternative.

12

13

14

15          Second, even the hearsay that Dr. Cox received from others shows that there are technical

16  alternatives.

17

18                                                          Dr. Cox has no

19  evidence that the alternatives would be unacceptable to consumers.

20

21                                          Moreover, he failed even to inquire

22  about the most obvious alternative: the addition of purified water to dilute the refold solution.

23

24                                          [5] Dr. Cox's opinions do not

25

26  _____

27          [5] By his own admission, Cox never even asked the right questions about non-infringing alternatives in general.  During his investigation, he

28                                                          (Footnote continues on next page.)

Defts' Motion for Summary Judgment re Damages
Case No. 3:14-cv-04741-RS; Case No. 3:16-cv-02581-RS
pa-1805505

13

1    provide the jury a basis to conclude there are no non-infringing alternatives to the '878 patent.

2           So, Amgen attempts to rely on Dr. Cox to state an opinion that regulatory delay would

3    allegedly have kept Sandoz from changing to a non-infringing alternative for three years. (Ex. 22

4    ¶¶ 41, 81.)  This again will not satisfy Amgen's burden.  Dr. Cox is not a regulatory expert, no

5    one on his staff is a regulatory expert, and he did not speak with anyone at Amgen about

6    regulatory issues.  (Ex. 20 at 18:19-24, 23:2-8, 26:20-27:4, 37:18-38:9, 52:4-53:24, 59:23-60:12,

7    79:6-9.)  He cannot provide evidence on this issue that would be admissible under either Rule 602

8    or Rule 702.  Fed. R. Evid. §§ 602, 702.  This alone ends the inquiry.

9           Moreover, Dr. Cox's three year estimate does not measure what is required to change

10   from an infringing alternative to a non-infringing alternative.  Rather, Dr. Cox bases his three

11   year estimate solely on ████████████████████████████████████

12   ████████████████████████████████████████████████████████

13   ████████████████████████████████████████████████████████

14   ████████████████████████████████████████████████████████

15   ████████████████████████████████████ Even so, he did nothing to look into

16   any actual *non-infringing* alternatives.  ███████████████████████████

17   ████████████████████████████████████████████████████████

18   █████████████████████████████ Once again, this evidence also will not satisfy

19   Amgen's burden to prove that there were no non-infringing alternatives to the patented method.

20          Finally, Sandoz has offered unrebutted evidence that it could add a dilution step without

21   obtaining prior approval from the FDA.  As noted above, by Amgen's admissions and by virtue

22   _____

     (Footnote continued from previous page.)

23   ██████████████████████████████████████████████████████

24   ██████████████████████████████

25   ⁶ ██████████████████████████████████████████████████████

26   ██████████████████████████████████████████████████████████

27   ██████████████████████████████████████████████████████████

28

1    of the Court's claim construction, dilution is a non-infringing alternative.  Sandoz's technical and

2    damages experts (after consulting with three fact witnesses identified during discovery) have

3    provided unrebutted testimony that Sandoz could dilute the refold mixture

4

5

6                                                          Nonetheless, it is Amgen—not Sandoz—that bears the

7    burden of proof to justify the requirements for an award of lost profits.  Amgen admits that there

8    are non-infringing alternatives, and Amgen has no evidence from which a jury could conclude

9    that all these alternatives are beyond Sandoz's reach.

10          There is no dispute.  There are non-infringing alternatives to the '878 patent.  Amgen has

11   offered no evidence that Sandoz lacks access to them.  Dr. Cox cannot support a conclusion to the

12   contrary.  Sandoz is entitled to an order precluding Amgen from seeking lost profits.

13          **E.      Plaintiffs Cannot Claim Damages Prior to September 21, 2015.**

14          A patent holder cannot seek damages for a patent until it gives notice to the alleged

15   infringer of its intent to assert the patent against that party.  35 U.S.C. § 287(a); *Rembrandt*

16   *Wireless Techs., LP v. Samsung Elecs. Co., Ltd.*, 853 F.3d 1370, 1383 (Fed. Cir. 2017).  Amgen

17   did not provide notice of the '878 patent until September 21, 2015.  (Olson Decl. ¶ 2.)

18   Accordingly, Plaintiffs cannot seek any damages from Sandoz for the '878 patent prior to

19   September 21, 2015.

20          **F.      The Proper Hypothetical Negotiation Date is January 27, 2015.**

21          Under the relevant law, "[a] reasonable royalty is derived by 'envisioning the terms of a

22   licensing agreement reached as the result of a supposed bargain between the patentee and the

23   infringer at the time infringement began.'"  *Oracle Am., Inc. v. Google Inc*., 798 F. Supp. 2d

24   1111, 1116 (N.D. Cal. 2011) (citing *Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1372 (Fed. Cir.

25   2008)).  In light of the BPCIA, the alleged infringement first occurred on January 27, 2015, when

26   the patent was granted and Sandoz began allegedly infringing under 35 U.S.C. § 271(e)(2)(C)(ii).

27   Alternatively, on or before May 4, 2015,

28                                                       In this case, one of these two limits applies.

1    In most cases, infringement is defined by 35 U.S.C. §§ 271(a) or (g). "Direct patent

2  infringement includes making, using, selling, offering to sell, or importing" any patented

3  invention or product made by a patented process. *See Oracle*, 798 F. Supp. 2d at 1116 (citing 35

4  U.S.C. § 271(a). In the present case, this alleged infringement occurred prior to May 5, 2015,

5  ███████████████████████████████████████████████████

6  ███████████████████████████████████████████████

7  ██████████████████████████████████████████████████████

8  ██████████████████████████████████████  If section 271(a) or (g) is the

9  correct touchstone for a hypothetical negotiation, May 4 ███████████████████████████

10  ████████████  is the date for the hypothetical negotiation.

11    However, the BPCIA defines another act of infringement unique to cases involving

12  biosimilars. "It shall be an act of infringement to submit . . . an application seeking approval of a

13  biological product." *Sandoz*, 137 S. Ct. at 1674 (quoting 35 U.S.C. §§ 271(e)(2)(C)(i), (ii)). This

14  act of infringement allows the patentee, under certain limited conditions, to file suit in

15  circumstances where they would otherwise lack standing. By extension, the BPCIA encourages

16  parties to begin actual negotiation over any alleged infringement earlier.

17    Thus, Sandoz believes that January 27, 2015—the date the '878 patent issued—is the

18  appropriate date for a hypothetical negotiation. At this time, all the criteria of the BPCIA under

19  section 271(e)(2)(C)(ii) were met. Thus, Sandoz was allegedly infringing the '878 patent when it

20  issued, and Amgen was in a position to file suit, had it wished, on that day.

21    When the allegedly infringing behavior began prior to the patent's issue date, courts

22  routinely set the hypothetical negotiation to the issue date. *Fresenius Med. Care Holdings, Inc. v.*

23  *Baxter Int'l, Inc.*, No. C 03-1431 SBA, 2006 WL 1390416, at *18-19 (N.D. Cal. May 18, 2006)

24  (citing *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) ("a court should

25  look to the earliest date of infringement, which is often the date that the patent issued."). Notably,

26  on January 27, Amgen had already filed suit against Sandoz for patent infringement on a different

27  patent relying on the relevant part of the BPCIA. (Orig. Complaint ¶ 7 ("Defendants have also

28  committed a statutory act of patent infringement under the United States patent law, 35 U.S.C.

1 § 271(e)(2)(C)(ii), by submitting an application for approval of a biological product").)

2      In an effort to increase its damages claim by maximizing the alleged costs to Sandoz of

3 switching away from the patented method (assuming Sandoz infringes), Amgen has argued that

4 the hypothetical negotiation should take place on the first date of commercial sale, which

5 occurred on September 3, 2015. (Ex. 22, Cox Rpt. ¶ 76.) This position is incorrect under any

6 reading of the law. This Court has previously considered and rejected the argument that

7 hypothetical negotiations should take place on the first date of sale, when there are earlier acts of

8 infringement. *Oracle*, 798 F. Supp. 2d at 1116; *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-

9 cv-03587-WHO, 2015 WL 1265009, at \*4-5 (N.D. Cal. Mar. 19, 2015); *see also Georgia-Pac.*

10 *Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1123 (S.D.N.Y. 1970). Amgen's position is

11 also contrary to its own positions in a different biosimilar case. In *Amgen v. Hospira*, No. 15-

12 839-RGA (D. Del.), Amgen's damages expert Dr. Randall Heeb used a hypothetical negotiation

13 date based on the first date of manufacture, rather than waiting for a first sale or FDA approval.

14 (Ex. 31 at 602:1-7, 610:13-17, 621:3-18.) Although Dr. Cox used September 3 in his analysis in

15 this case, he agreed in deposition tha▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (*Compare* Ex. 22 ¶

17 76 *with* Ex. 20 at 89:10-90:11, 92:16-24.)[7]

18      To begin the hypothetical negotiation in the "but for" world in September 2015, when

19 negotiations began in July 2014 in the actual world, is also illogical and inconsistent with the

20 legal purpose of setting the hypothetical negotiation date on the date of first infringement. The

21 reasonable royalty calculation is meant to set a floor on damages and to prevent the patentee from

22

23      [7] Based on an exhibit used at the deposition of Sandoz's damages expert, Gregory Bell, Sandoz anticipates that Amgen may argue that the Federal Circuit's May 5 injunction precludes

24 the use of May 4, 2015. (Ex. 29, Bell Dep. at 200:2-202:15.) That is wrong; Sandoz cannot be restricted by an injunction before it issues. Alternatively, Amgen's attorney referred to a prior

25 stipulation between Amgen and Sandoz. (*Id.*) The relevant portion reads: "Sandoz agrees not to launch its product until a decision by the Federal Circuit on Amgen's motion for an injunction

26 pending appeal, or May 11, 2015, whichever is earlier." (ECF No. 106-1 ¶ 5.) Sandoz complied with that stipulation; it did not launch Zarxio at that time. It did not sell Zarxio or ship Zarxio to

27 customers until September 3, 2015. (Ex. 27, Thole Dep. at 204:13-206:2.)▮▮▮▮▮▮▮▮

28 ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

exploiting "hold up costs" as the accused infringer invests additional resources in marketing, developing, and committing to an allegedly infringing method.  *See* 35 U.S.C. § 284; *Realtek Semiconductor Corp. v. LSI Corp.*, No. C-12-03451-RMW, 2014 WL 46997, at *6 (N.D. Cal. Jan. 6, 2014) (citing *Apple, Inc. v. Motorola, Inc.*, 869 F. Supp. 2d 901, 914 (N.D. Ill. 2012) (Posner, J., sitting by designation) (concerns regarding "serious hold-up and switching costs" that "may often be higher than the true value of the technology").  Amgen's damages expert agrees that the hypothetical negotiation date can impact switching costs in a way that awards patentees "unwarranted litigation windfalls."  (Ex. 32, Alan J. Cox et al., *Assessing the Damages Provisions in the Patent Reform Act of 2007*, NERA Economic Consulting, Nov. 2007, at 4.)

> [C]urrent case law calls for the reasonable royalty to be determined on the eve of first infringement.  Depending on market circumstances, this timing can have a material impact on what is paid for a patent.  A patent is often issued after a company starts making a product that incorporates a feature described in that patent.  If the company's alternatives are limited at the issue date due, for example, to high costs associated with switching technologies, a hypothetical negotiation framework at that date could lead to a substantial damages claim, possibly in excess of any measure of the fundamental value of the patent.  On the other hand, first infringement might occur at a much earlier stage of the product life cycle when switching costs may be much lower.

(*Id.*)  Sandoz respectfully requests that the Court set the hypothetical negotiation on January 27, 2015.

## IV.   CONCLUSION

For the foregoing reasons, the court should grant Sandoz's motion for partial summary judgment regarding standing and relief.

Dated: October 25, 2017                     MORRISON & FOERSTER LLP


                                            By: */s/ Erik J. Olson*
                                                Erik J. Olson

                                            Attorneys for Defendants
                                            Sandoz Inc., Sandoz International GmbH,
                                            Sandoz GmbH, and Lek Pharmaceuticals,
                                            d.d.

Defts' Motion for Summary Judgment re Damages
Case No. 3:14-cv-04741-RS; Case No. 3:16-cv-02581-RS
pa-1805505                                                                    18